[Civ. No. 19856. Second Dist., Div. Two. Mar. 15, 1954.]

CHRIS LAURSEN, Appellant, v. TIDEWATER ASSOCIATED OIL COMPANY (a Corporation) et al., Respondents.

A. J. Blackman and Norman Dale Kull for Appellant.

Betts, Ely & Loomis and Crider, Tilson & Ruppe for Respondents.

MOORE, P. J.—Appellant's recovery was denied by a jury in his action for property damage and personal injuries resulting from a trivehicular collision on a public highway. His grounds of appeal are errors in the admission of certain testimony and in refusing to give a requested instruction.

About 4 o'clock in the afternoon while appellant was driving east on Anaheim-Telegraph Road in a small station wagon, he was followed by respondent Kintz at a distance of about 25 feet. The latter, as employee of the Tidewater Associated Oil Company, herein referred to as Tidewater, was driving a large flatbed truck. Both men were proceeding at approximately 20 miles per hour in the lane adjacent to the double white line in the center of the highway. Respondent Kirsop was traveling west on the same road in a small truck of respondent Rowen Electric Company and was in the pursuit of his employment. He, also, was in the lane adjoining the center stripes and, immediately preceding the accident, was moving at about 15 miles per hour. There is a conflict in the evidence as to how the accident occurred, but it is established that, in a fleeting moment the Rowen truck received some damage, the station wagon was wrecked and Mr. Laursen was so severely injured as to be incapacitated for a time.

In response to appellant's demand against all respondents, respondent Rowen Electric Company entered a cross-complaint for damage to its truck. The court found for respondents on the original action, and for appellant on the cross-complaint.

According to appellant's version: he was slowing down because of the slower traffic ahead; Mr. Kintz failed to reduce his speed accordingly and "bumped" the rear of appellant's station wagon. Immediately thereafter Mr. Kirsop in the small truck swerved across the center line and "side-swiped" the station wagon which was again hit on the rear end by the Tidewater truck. According to respondents' evidence: appellant had a large piece of plyboard attached to the top of his vehicle and as he reached out of his window to touch the plyboard, his station wagon moved across the center line and struck Kirsop's truck back of its door. The station wagon bounced back into the eastbound lane and was then struck for the first time by the Tidewater truck.

During appellant's rebuttal he gave the following testimony on direct examination:

"Q. Had he [Kirsop] testified on a previous occasion in regard to this accident? A. Yes."

Cross-examination of appellant elicited the fact that such previous testimony occurred when he had been the defendant in a criminal prosecution based on the facts above related. The result of the prosecution was not introduced. Appellant's

counsel objected to the cross-examination on the ground that it was immaterial as to what the prior proceeding was, but the objection was overruled. Certainly the fact that there had been either a criminal or a civil proceeding based on the accident here in issue was not material to the questions of negligence and contributory negligence presented in the instant action. ■ Moreover, legitimate cross-examination does not extend to matters improperly admitted on direct examination. ■ Failure to object to improper questions on direct may not be taken advantage of on cross-examination to elicit immaterial or irrelevant testimony. The so-called "open the gates" argument is a popular fallacy. (*Dastagir* v. *Dastagir*, 109 Cal.App.2d 809, 815 [241 P.2d 656]; *Agalianos* v. *American Central Ins. Co.*, 62 Cal.App. 349, 362 [217 P. 107].)

This leads to the inquiry whether there was any other element of the case to which the question addressed to appellant on direct examination was material? If so, cross-examination on the facts stated was proper. (Code Civ. Proc., §§ 1854, 2048.) ■ The fact that an inquiry on cross-examination may bring to light the criminal conduct of the witness does not render such cross-examination erroneous when it is relevant to the subject matter of the direct examination. (*People* v. *Bigelow*, 104 Cal.App.2d 380, 387 [231 P.2d 881].)

The question objected to appears to be the climax of a series of questions put by both sides for the purpose of impeachment and counterimpeachment of witnesses in regard to a conversation between appellant and respondent Kirsop. The first reference to the conversation was in the cross-examination of appellant:

"Q. And do you recall what you said and what Mr. Kirsop said? A. I asked him why he had not told the truth in place of what he was telling. He said, 'I am going to tell the truth when we come into court again.'"

Then on direct examination, Mr. Kirsop testified as follows:

"Q. And can you tell in substance what was said? A. Mr. Laursen asked me to be a witness for him against the Tidewater Oil Company.

"Q. What did you say in response to that? A. I told him I can't be, because I didn't see the Tidewater Oil Company truck until after the accident.

"Q. Was anything said about your being at fault in this accident at that time? A. He said I wasn't at fault.

"Q. Was anything else said at that time? A. That's about all—well, he told me that he was pretty bad off financially.

"Q. Did he say anything, what he would do if you would be a witness? A. Well, he said he would make it right for me."

The above testimony was substantially repeated by Mr. Kirsop on cross-examination by counsel for respondent Tidewater. In addition he testified as follows:

"Q. Am I hearing you correctly: That he [Laursen] then said to you, 'Well, the Tidewater Associated can stand it,' or words to that effect? A. Words to that effect, yes."

In rebuttal, appellant amplified his previous testimony on the content of the conversation:

"Q. What was the occasion for going out there? A. It was my wife's idea. She want to go up there.

"Q. Do you know what the purpose of going up there was? A. She want to go up there and see—ask him to tell the truth, because he was not telling the truth.

"Q. Had he testified on a previous occasion in regard to this accident? A. Yes.

"Q. And what was said by you and what was said by Mrs. Laursen, and what was said by Mr. Kirsop on this occasion? A. You mean out by his home?

"Q. Yes, sir. A. We went out there asking him why he don't tell the truth—well, he was going to tell the truth, and when it came up for trial he was going to tell the truth, as he promised."

■ This testimony on rebuttal was material to the issue of whether appellant had attempted to induce Mr. Kirsop to testify falsely in the present action by showing that the conversation was occasioned by the alleged false testimony given under oath in a prior trial rather than by any idea born in the mind of appellant to change the course of the present litigation through the means of purchased evidence. Since the testimony was material, the objection to cross-examination on it was properly overruled.

■ Moreover, in order to preserve the right to have the question of admissibility of evidence considered on appeal, one must at the trial precisely designate the particular part of the evidence to which he objects and state specifically in what respect it is improper. (*Estate of Pierce*, 32 Cal.2d 265, 273 [196 P.2d 1]; *People* v. *Agajanian*, 97 Cal.App.2d 399, 405 [218 P.2d 114]; *Soares* v. *Ghisletta*, 1 Cal.App.2d 402, 404 [36 P.2d 668].)

■ The question asked on cross-examination was, ''What court proceeding ⸰was that?'' The objection made at that time was: ''It would be immaterial here what court proceeding it was.'' The court ruled that the question was proper cross-examination. On appeal, it is argued that the question was improper because it was cross-examination on an immaterial matter raised on direct examination, i.e., the fact that any prior proceeding had occurred. This objection was not mentioned in the trial and now comes too late.

■ Appellant submitted an instruction, No. 140* from the Book of Approved Jury Instructions, Civil, which was refused. For the instruction to be applicable it is necessary that there be ''evidence to the effect that one did look, but did not see that which was in plain sight.'' From the record it is manifest that Mr. Kintz, driver of the Tidewater truck following appellant, was looking ahead and that he saw appellant's truck. The conflict presented to the jury was—what was in plain sight—was appellant slowing down when he was hit by Kintz, or did appellant swerve across the center line, hit Kirsop and carom into Kintz's path? The instruction was not applicable to the issues presented and no prejudice resulted from its refusal.

■ Furthermore, it is the rule that the instruction on ''to look is to see'' is a mere commonplace, within the knowledge of all the jurors, and is argumentative, rather than a statement of the law. A failure to give such an instruction is not error when the jury has been adequately instructed as to the duties of respondents. (*Cooper* v. *Smith,* 209 Cal. 562, 566 [289 P. 614]; *Rickey* v. *Kardassakis,* 110 Cal.App. 2d 291, 295 [242 P.2d 384]; *Schwenger* v. *Gaither,* 87 Cal. App.2d 913, 914 [198 P.2d 108].)

The judgment is affirmed.

McComb, J., and Fox, J., concurred.

---

*B.A.J.I. No. 140: ''General human experience justifies the inference that when one looks in the direction of an object clearly visible, he sees it, and that when he listens, he hears that which is clearly audible. When there is evidence to the effect that one did look, but did not see that which was in plain sight, or that he listened, but did not hear that which he could have heard in the exercise of ordinary care, it follows that either some part of such evidence is untrue or the person was negli gently inattentive.''